STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
|  | } |  |
| In re: Application of Robert and Amy Scharges, | } |  |
| d/b/a Vermont Canoe, LLC. | } | Docket No. 194-9-05 Vtec |
| (Appeal of Morris) | } |  |
|  | } |  |

<u>Decision and Order on Cross-Motions for Partial Summary Judgment or to Dismiss</u>

Appellant Robin Morris appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Waitsfield, granting Appellee-Applicants Robert and Marie Scharges' application to amend their conditional use approval. Appellee-Applicants also filed a cross-appeal. Appellant Robin Morris appeared and represents himself; Appellee-Applicants are represented by James A. Caffry, Esq.; the Town is represented by Joseph S. McLean, Esq. Interested Person Brian Fleisher appeared and represents himself, but did not participate in the briefing of the present motions.

Appellant moved for summary judgment on the portion of Question 1 of Appellant's Statement of Questions that addresses whether the application was an impermissible successive application. Appellee-Applicants moved to dismiss Question 2 of Appellant's Statement of Questions and for summary judgment or to dismiss Question 3 of Appellants' Statement of Questions.

The following facts are undisputed unless otherwise noted. Appellee-Applicants own a 3.3-acre parcel of land located at 5639 Main Street (Route 100) in the Irasville Village zoning district, on which they maintain their residence and on which they conduct their business in a separate 2,250-square-foot barn on the property, which qualifies as an "historic barn" under the Zoning Bylaws. Appellant, through 1840 Starch House, LLC,

owns the adjacent 1.2-acre property, which contains a building in which Mad River Massage, a commercial use, is located. Appellee-Applicants' and Appellant's properties share a common driveway, which also provides access to a nearby commercial complex known as "Fiddlers' Green," including at least a dental office and a car wash.

Beginning in 2000, Appellee-Applicants operated a retail sales and repair service business at the property known as Vermont Pack and Paddle. It sold and repaired paddle sports products produced elsewhere in Waitsfield, and provided canoe guiding services and ski tuning services. In connection with the retail business, Appellee-Applicants had received site plan approval in 2000 for operation of the business on their property, including outdoor storage racks for the display of canoes and kayaks at the rear of the building.

After their Waitsfield supplier relocated to another state, in January of 2004 Appellee-Applicants formed Vermont Canoe, LLC. In April of 2004, Appellee-Applicants applied to add canoe fabrication, under the "light industry" use category, to the existing mixed use of retail and residential uses on their property. They proposed to add the construction of up to seven canoes per month in the basement of the barn, using the same types of materials as they were already using to conduct their repair services, and using the same air filtration system installed for the repair services.

On January 3, 2005, the ZBA granted conditional use approval to Appellee-Applicants to produce up to seven canoes a month as a "light industry" use, entirely within the basement of the barn, while Vermont Pack and Paddle's retail operations were to continue on the barn's main floor. In connection with the January 2005 approval, the ZBA made a finding that at that time Appellee-Applicants "propose[d] to construct not more than seven canoes per month on the property," and that they "intend[ed] to move their construction operations to a larger facility off-site" at "such time as there becomes a market demand for the production of more than seven canoes per month."

2

In the January 2005 approval, the ZBA imposed a specific condition that Appellee-Applicants must meet the odor-control section of the Zoning Bylaws (§5.3(D)(8)), that is, that they "shall not discharge any noticeable odors which are offensive and uncharacteristic of the area, or which will result in an undue adverse impact on the use of any public or private property or facility." In the January 2005 approval, the newly-constructed canoes, once finished, were specifically allowed to be displayed for retail sales outside on the existing permitted racks. The ZBA analyzed whether canoe fabrication fell within the use category of "light industry" and concluded that it did. No party appealed the ZBA's issuance of conditional use approval, and it cannot now be challenged, directly or indirectly. 24 V.S.A. §4472. Thus, as of the issuance of the January 2005 approval, the property was approved as a mixed use consisting of a single-family dwelling, and, in a separate historic barn, 1,800 square feet of retail use, 750 square feet of light industry (canoe fabrication) use, and 100 square feet of accessory office space.

Proposed revisions to the Zoning Bylaws, submitted by the Planning Commission to the Selectboard in December of 2004, were scheduled for public hearing on March 28, 2005. These revisions included a proposed addition to the definition of the use category of "light industry" to add the phrase "and are conducted at a scale and intensity that is characteristic of other uses allowed within the district in which the light industry is located." However, as adopted by the Selectboard on May 2, 2005, the new Zoning Bylaws did not contain the proposed change in the language of the definition of "light industry," leaving the term defined as "the manufacturing, compounding, processing, packaging, assembly and/or treatment of finished or semi-finished products from previously manufactured materials, which activities are conducted wholly within an enclosed building." Zoning Bylaws §7.02.

Appellee-Applicants then filed the application that is at issue before the Court on May 2, 2005, and it was considered under the definition of "light industry" without the

3

proposed added phrase that had been voted down. Appellee-Applicants applied to amend the condition of their January 2005 conditional use approval that limited canoe fabrication to seven canoes per month. Because they were closing their retail business, an additional 1,800 square feet of space became available in the barn, which they proposed to use for canoe fabrication. As considered by the ZBA, the application requested approval of the fabrication of eighty canoes per month within the barn.

After hearings in May, June, and July, the ZBA approved Applicants' conditional use amendment application in August of 2005, imposing conditions that included prohibiting retail or showroom activities related to the canoe production use (with the exception of minor ski tuning and canoe repair services); prohibiting additional outdoor storage of canoes beyond the six existing approved racks; requiring all canoe fabrication to be conducted wholly within the barn; requiring safe storage of all flammable or otherwise hazardous materials; requiring a specified air emissions ventilation and filter system to be installed and maintained regularly; requiring an air exhaust dispersion stack to be installed; and limiting Applicants' canoe production to eighty canoes per month, using no more than six employees on site at any time, restricted to weekday hours from 8:00 a.m. to 6:00 p.m.

Appellee-Applicants' cross-appeal seeks clarification or amendment of the August 2005 decision to allow them to conduct two types of activities on the premises: first, that the prohibition of retail use of the barn does not limit their ability to continue existing canoe guiding services and rental business for canoes, kayaks, fly-fishing equipment, and snowshoes, without any customer entry into the barn; and, second, that they retain the ability to make direct retail sales of the new canoes and kayaks made on the premises, also without any customer entry into the barn.

4

Question 1 of Appellant's Statement of Questions

Question 1 of Appellant's Statement of Questions in part raises the merits of whether the May 2005 application should be approved, and in part questions "whether there has been a change in circumstances justifying the amendment, sufficient to override the principles of 24 V.S.A. §4472 (exclusivity of remedy) and overturning the official finality of the January 2005 permit."

Appellant has moved for summary judgment on the latter issue. Appellant argues that Applicants cannot apply to amend their conditional use approval to expand the canoe fabrication use to produce eighty canoes a month, because the January 2005 conditional use approval was conditioned on production of only seven canoes per month.

In the application resulting in the January 2005 conditional use approval, Appellee-Applicant proposed mixed use of their property for a residence in their house, a retail operation in 1,800 square feet of their barn, and a light industry use, proposing to produce seven canoes a month in the 750-square-foot barn basement. That was all that was granted, so that the production of any larger number of canoes would have at least required a permit amendment.

If Appellee-Applicants were now applying to keep the retail operation as approved, and to increase the number of canoes produced in the barn, we would examine whether the proposal was sufficiently different from the prior application to warrant a successive application.[1]  24 V.S.A. §4470(a). However, the fact that Appellee-Applicants are also proposing to eliminate the retail use of the remainder of the barn is a changed circumstance sufficient in itself to allow them to file the new application. We note that the fact that they are entitled to make the application does not resolve whether it should be approved or

---

[1] See, e.g., In re Appeal of Hildebrand, Docket No. 228-12-04 Vtec (Vt. Envtl. Ct., Oct. 13, 2005).

5

disapproved on the merits of this <u>de novo</u> appeal, that is, whether the fabrication of up to eighty canoes per month instead of seven canoes per month satisfies the conditional use standards in Zoning Bylaws §§5.3(C) and 5.3(D).  That is what remains for the hearing on the merits of Question 1 of Appellant's Statement of Questions.

<u>Question 2 of Appellant's Statement of Questions</u>

Question 2 of Appellant's Statement of Questions raises the question of "whether the proposed use, to construct 80 canoes per month, satisfies the definition of 'light industry,' which requires such uses to be 'conducted at a scale and intensity that is characteristic of other uses allowed within the district in which the light industry is located'," citing an unnumbered section of the Zoning Bylaws.

The language quoted in this question is language that was proposed to be added to the definition of the use category "light industry" but was not in fact adopted.  The definition of "light industry" in effect at the time of the January 2005 approval, and remaining in effect as of the May 3, 2005 amendment application, only requires that processing of products from previously manufactured materials be "conducted wholly within an enclosed building."  Zoning Bylaws, §7.02.

While 24 V.S.A. §4449(d) requires applications submitted under proposed zoning bylaws to be considered under the proposed bylaw provisions, that requirement only applies to applications filed between the time of the public notice for the first public hearing on the proposed bylaw, and, if rejected, the time it is voted down.  After a proposed bylaw is rejected, the application is to be reviewed under the existing bylaws. 24 V.S.A. §4449(d).

Therefore, Applicants' motion to dismiss Appellant's Question 2 is GRANTED.

<u>Question 3 of the Appellant's Statement of Questions</u>

Question 3 of Appellant's Statement of Questions raises the question of whether the proposed use "qualifies for conditional use in light of the plan to store canoes outside the building, where [the definition of the term 'light industry'] requires light industry to be 'wholly within an enclosed building.'"

Unlike Question 1, Question 3 does not raise the issue of whether any of the conditional use standards are met by the current proposal; rather, it only questions whether the outside storage of the finished canoes removes the proposed canoe fabrication use from the use category of "light industry." Outside storage of finished canoes in the existing racks was allowed by the January 2005 unappealed conditional use approval. No proposal has been made to increase the capacity for outside storage beyond that of the existing racks.[2] Therefore, even if outside storage of the finished canoes did not fall within the definition of the "light industry" use category, it would be allowed to continue to the extent that it was permitted in the January 2005 unappealed conditional use approval. Therefore, Appellee-Applicants' motion for summary judgment on Question 3 of the Statement of Questions must be granted.

In any event, as the ZBA reasoned in its January 2005 decision, the entire process of producing a canoe takes place wholly within the enclosed building. The new canoes do not leave the building until they are completed and ready for sale. Their storage in the existing racks, before they are shipped off the premises, does not remove the fabrication process from the use category of "light industry," as that term is defined in the Zoning Bylaws applicable to this proposal.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that

---

[2] As the Court relied on this undisputed fact, we address this issue by way of Appellee-Applicants' motion for summary judgment rather than their motion to dismiss.

Appellant's motion for summary judgment on Question 1 is DENIED, and summary judgment on that question is GRANTED in PART to Appellee-Applicants, as Appellee-Applicants are entitled to apply to expand the number of canoes produced per month. Facts remain in dispute as to whether the application meets the standards for conditional use approval. Appellee-Applicants' motion to dismiss Appellant's Question 2 is hereby GRANTED as discussed above. Appellee-Applicants' motion to dismiss or, in the alternative, for summary judgment on Appellant's Question 3 is hereby GRANTED as discussed above.

A telephone conference is scheduled for March 8, 2006 (see enclosed notice) to discuss whether mediation would be useful in the resolution of what remains of this appeal, and to discuss the scheduling of a hearing on the merits on the two questions raised by Appellee-Applicants' Statement of Questions and on the remaining issues in Questions 1 and 4 of Appellant's Statement of Questions. Please be prepared to discuss the parties' available dates for that hearing in April, May and June, 2006.

Done at Berlin, Vermont, this 24th day of February, 2006.

_____
Merideth Wright
Environmental Judge

8